ORIGINAL

H≡ 5 5 76 58

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DANIEL G. GILMORE, individually and )
on behalf of all others similarly situated, )
                               )
                    Plaintiff, )
                               )
       v.                            )
                               )
FIRST AMERICAN TITLE INSURANCE )
COMPANY, a California corporation, )
                               )
                  Defendant. )

Case: 2:07-cv-12123
Assigned To: Rosen, Gerald E
Referral Judge: Morgan, Virginia M
Filed: 05-16-2007 At 03:05 PM
CMP GILMORE V FIRST AMERICAN TITLE
INSURANCE CO (EW)

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

        Plaintiff, Daniel G. Gilmore, individually and on behalf of all others similarly situated,

through his undersigned attorneys, complains against defendant First American Title Insurance

Company, a California corporation ("First American" or "Defendant"), as follows:

### INTRODUCTION

        1.      Although Defendant is required by law to impose predetermined premium rates

for title insurance policies, it routinely and systematically charges customers well in excess of

these rates – thereby collecting unlawful profit to the detriment of Plaintiff and the class of

persons he seeks to represent.

        2.      Title insurance is an unavoidable cost of any residential refinancing transaction.

The lending institutions which underwrite a refinance are the actual beneficiaries of such

policies, and these entities require that a homeowner purchase the coverage for the protection of

the lender. Without title insurance, lenders generally refuse to provide a loan for a residential

mortgage.

        3.      All title insurers, including Defendant, are compelled by law to adhere to a

schedule of exact rates for the policy premiums which they impose. These rates must be filed

with the state insurance departments of those jurisdictions in which the title underwriters conduct business. Each title insurer's rate schedule sets precise limits – which cannot legally be exceeded – on the price that may be charged for every given coverage amount. The rate schedules also mandate that policies issued for many refinance transactions cost significantly less than policies connected to a multi-party property sale.

4.       A title insurer's rate schedule actually lists the specific premium prices which may be charged for every possible level of coverage. By way of example, a loan of $100,000 (requiring $100,000 of coverage) will require a premium of exactly $605, while a loan of $110,000 (needing an additional $10,000 of coverage) must cost precisely $635. A title insurer's rate schedule will also often expressly clarify that a "standard" or "lenders" policy – the type of coverage appropriate to a refinance transaction – must cost less than a "homeowner's" policy, which furnishes more expansive and expensive protection.

5.       Additionally, rate schedules dictate that under certain circumstances, customers who purchase title insurance in association with a refinance transaction are entitled to a substantially lower price than that charged for a multi-party sale. There are several terms for this lower rate, including "reissue," "refinance," "prior policy," or "substitution" rate (hereafter, collectively, the "reissue rate" or "reissue discount").

6.       Reissue rates are significantly lower than multi-party sale rates (often termed, the "basic" rate) because title companies perform less work in preparing a reissue policy, and also insure against less risk. Refinance transactions generally occur when there has been no change in ownership of a property, and a short period of time has elapsed since the homeowner purchased prior, valid title coverage. As a result, insurers are typically able to rely on the comprehensive investigations which have already been undertaken for the specific property and

-2-

owner in question.  Insurers therefore spend considerably less time and money conducting an updated title search for placement of a reissue policy.

7.      Additionally, reissue policies only protect policyholders against title-related claims that arise during the short period of time between placement of the original and the reissue policies.  Consequently, a reissue policy insures against far less risk than a policy connected to a multi-party transaction.

8.      Since at least the mid-1990's, the title insurance industry, including Defendant, has ignored the explicit legal limitations on their premium fees, and has knowingly overcharged untold individual homeowners by hundreds of dollars for policies.  The insurers have perpetrated this deception in several distinct manners:  (1) by failing to charge statutorily mandated, lower reissue rates in connection with residential refinance transactions; (2) by imposing fees which are higher than those expressly set forth in their statutory rate schedules, in essence charging consumers for more coverage than is actually contained in their policies; (3) by charging premiums for needless and more expensive "homeowner's" (also called "owner's") coverage, instead of the cheaper "standard" coverage appropriate to refinance transactions.

9.      The industry itself admits that such overcharging by title insurers is a widespread problem.  Indeed, the Executive Vice President of the industry's trade association, the American Land Title Association, has acknowledged, "We know not everyone is familiar [with reissue rate discounts, and] [w]e know [overcharging] is a problem."[1]  Yet the major title insurance underwriters, including Defendant, continue to engage in these deceptive, misleading and illegal acts as a matter of policy and practice.

---

[1]  Kenneth R. Harney, *Refinancers Should Seek Lower Rate on Refinance*, The Baltimore Sun, April 13, 2003, at 1L.

10.     Not surprisingly, the title insurance industry, including Defendant, has profited handsomely by disregarding the law.  For example, with interest rates in past years at a four-decade low, eager homeowners have lined up to refinance their existing home loans.  In 2002, Americans paid approximately $11 billion, up from $7.8 billion in 2000, for title insurance and related services.[2]

11.     Title insurance underwriters have so grossly inflated the cost of their insurance that they now pay out only five to ten cents in claims for every dollar in premiums they collect.[3] This huge profit margin stands in sharp contrast to that of other insurance classes, such as property and casualty, where companies pay out as much as ninety cents for every premium dollar collected.

12.     One of the two major home mortgage financiers, Fannie Mae, has noted, "It's safe to say that prices [of title insurance], in many respects, are higher than they ought to be."[4]  The other major financier, Freddie Mac, went so far as to meet with title insurance executives, exhorting them to disclose their reissue rates to consumers in order to allow them to benefit from the potentially huge savings which would result.[5]  Undeterred, however, the industry continues to overcharge homeowners in violation of state law.

13.     As set forth below, Plaintiff and the Class have fallen victim to these unlawful industry-wide policies and practices.

---

[2]  Ruth Simon, *Good Deeds: Refinancing Boom Puts New Pressure on Title Industry*, The Wall Street Journal, Dec. 18,2002, at A1.

[3]  Melynda Dovel Wilcox, *Home Buyers Beware*, Kiplinger's, Oct. 2001, at 96-100.

[4]  Simon, *supra*, page 4.

[5]  Kenneth R. Harney, *Refinancing's Magic Words*, The Washington Post, June 8, 2002, at H01.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction of the claims asserted herein insofar as the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which members of the class of plaintiffs are citizens of states different from Defendants.  28 U.S.C. § 1332(d)(2)(A).  Jurisdiction is also proper under 28 U.S.C. § 1331.

15.     This District is the proper venue for adjudication of the claims asserted herein insofar as this is a judicial district where Defendant resides, as it is doing business and is subject to personal jurisdiction here.  28 U.S.C. § 1391(b)(1).

## THE PARTIES

16.     Plaintiff David G. Gilmore is a natural person and resident of Twin Lake, Michigan.   Plaintiff is a member of the class defined herein.

17.     Defendant First American Title Insurance Company is a corporation organized under the laws of California with its principal place of business in Santa Ana, California. Defendant sold a policy of title insurance insuring the title of the property financed by Plaintiff and other members of the Class defined herein.

## CLASS ACTION ALLEGATIONS

18.     This action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), as set forth below.

19.     *Class Definition.*  Plaintiff brings this action individually and on behalf of the

following class of similarly situated persons (the "Class"), of which he is a member:

> Persons in the states of Michigan, Colorado, Maryland, Minnesota,
> Missouri, New Jersey and Tennessee who, in connection with a
> mortgage refinancing, paid a title insurance premium for a First
> American title insurance policy the amount of which exceeded the
> rate on file in those states and/or exceeded a lower, reissue rate for
> which such persons qualified.

Excluded from the class are Defendant and any of its officers, directors or employees, the

presiding judge or any member of his or her immediate family, and members of any class or

classes previously certified.  Plaintiff reserves his right to amend the above class definition based

on discovery and the proofs at trial.

20.     *Numerosity.*  The members of the Class are so numerous that joinder of all

members is impracticable. While the exact number of Class members is unknown to Plaintiff at

this time and can only be ascertained through appropriate discovery, Plaintiff believes that there

are at least one hundred persons in the Class from each state.

21.     *Commonality.*  There are questions of law or fact common to the Class including,

*inter alia*, the following:

        a.      whether Defendant was obligated to charge title insurance rates that do not

exceed title insurance premium rates exceed those on file with and approved by state insurance

regulators;

        b.      whether Defendant was obligated to charge title insurance premium rates

that are lower than original issue rates when the transaction it issue involves a mortgage

refinancing, as opposed to an original purchase;

        c.      whether Defendant's title insurance premium rates exceed those on file

with and approved by state insurance regulators in the Class states;

      d.      whether Defendant's conduct violates the Real Estate Settlement

Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.*;

      e.      whether the acts and omissions alleged herein violated the consumer

protection laws of the Class states;

      f.      whether Defendant's retention of unlawful premiums constitutes unjust

enrichment;

      g.      whether a declaratory judgment providing that Defendant violated the

above-referenced state laws is appropriate;

      h.      whether Plaintiff and the members of the Class have sustained damages

and, if so, what is the proper measure of those damages; and

      i.      whether Plaintiff and the members of the Class are entitled to the relief

sought, including injunctive relief and attorneys' fees.

      22.    *Typicality.* The claims or defenses of Plaintiff are typical of the claims of the

Class, alleged herein;

      23.    *Adequacy.* Plaintiff will fairly and adequately protect the interests of the class.

Plaintiff has retained counsel competent and experienced in the prosecution of complex class

action litigation. The interests of the Plaintiff are aligned with, and not  antagonistic to, those of

the Class.

      24.    *Fed. R. Civ. P. 23(b)(2) Requirements.* The prerequisites to maintaining a class

action for injunctive and equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) exist as Defendant

has acted or refused to act on grounds generally applicable to the Class thereby making

appropriate final injunctive and equitable relief with respect to the Class as a whole.

25.     The prosecution of separate actions by members of the Class would create a risk of establishing incompatible standards of conduct for Defendant. For example, one court might decide that the challenged actions are illegal and enjoin them, while another court might decide that those same actions are not illegal. Individual actions may, as a practical matter, be dispositive of the interest of the Class, who would not be parties to those actions.

26.     Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole.

27.     Defendant's systemic policy and practices make declaratory relief with respect to the Class as a whole appropriate.

28.     *Fed. R. Civ. P. 23(b)(3) Requirements.* This case satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.

29.     The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially in view of the relatively modest amount of monetary, injunctive and equitable relief at issue for each individual Class member.

30.     This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the Class.

### FACTUAL ALLEGATIONS

31.     At all times relevant hereto, there was in full force and effect the Michigan Insurance Code of 1956, and substantially similar laws of Colorado, Maryland, Minnesota,

-8-

Missouri, New Jersey and Tennessee, which required, *inter alia*, Defendant to file its title

insurance premium rates with the state insurance commissioner:

> [E]very insurer shall file with the commissioner every manual of
> classification, every manual of rules and rates, every rating plan,
> and every modification of any of the foregoing that it proposes to
> use. Every such filing shall state the proposed effective date
> thereof and shall indicate the character and extent of the coverage
> contemplated.

Mich. Comp. Laws § 500.2406.[6]

32.     "No insurer shall make or issue a contract or policy except in accordance with the

filings which are in effect for said insurer [as provided in Section 2406, supra]." Mich. Comp.

Laws § 500.2412.

33.     The other Class states have substantially similar laws. *See* Colo. Rev. Stat. § 10-

11-118 and 10-4-405 (Colorado), Md. Code Ann., Insurance § 11-403 and 11-407 (Maryland),

Minn. Stat. § 70A.01 *et seq.* (Minnesota), Mo. Ann. Stat. § 381.032 (Missouri), N.J. Rev. Stat. §

17:46B-42 (New Jersey) and Tenn. Code Ann. § 56-35-111 (Tennessee).

34.     Notwithstanding the prohibitions of Mich. Comp. Laws § 500.2412 on the laws of

the other Class states set forth *supra*, Defendant charged Plaintiff and other members of the Class

title insurance premium rates it had on file.

35.     At all relevant times, Defendant's official Michigan rate filing established that the

policy premium charged in a refinance transaction occurring less than two years after the

issuance of a prior title policy must be discounted by 50% from the basic rate otherwise

applicable to the coverage being purchased.[7]

---

[6] Plaintiff makes no claim that Defendant failed to comply with the requirements of Mich. Comp.
Laws § 500.2406, nor does he challenge the amount of the rate Defendant filed pursuant thereto. Further,
Plaintiff does not assert any right of action under any state's insurance code itself.

[7] Only in instances where the prior issued title policy was entirely missing or unverifiable may a
lower refinance rate be denied.

36.    Plaintiff qualified for and was entitled to receive the discounted reissue rate for the premium he paid Defendant in connection with his refinancing. Plaintiff had purchased a prior title insurance policy (on the same premises at issue) within the two previous years. The mortgage giving rise to this earlier policy was reflected in the chain of title and credit report relative to Plaintiff's property, and was therefore well known and verifiable by reliable proof.

37.    On June 28, 2006, Plaintiff closed on the refinancing of his residence in Twin Lake, Michigan. As part of that transaction a title insurance policy was issued by Defendant, for which Plaintiff was charged a premium of $677.00 for lender's coverage in the amount of $111,750.00.

38.    As a refinancing, the maximum amount Defendant was allowed to charge for the above-described title insurance premium was $338.50, or 50% of the amount charged.

39.    Unbeknownst to Plaintiff, he qualified for the discounted refinancing rate of $338.50, Defendant charged him double that amount, or $677.00, which he paid at closing.

40.    This wrongful conduct was in direct accord with Defendant's uniform and customary business practices of: (a) overcharging consumers for title policies by failing to accord them discounted reissue rates in connection with qualifying refinance transactions, and; (b) failing to inform such customers that they qualify (or may qualify) for such discounted rates.

41.    As a direct and proximate result of Defendant's imposition of an illegal and excessive title insurance premium, Plaintiff has been financially damaged in an amount equivalent to the difference between the lawful price he should have paid for coverage and the actual sum he was deceived into tendering.

## COUNT I
### (Violation of the Real Estate Settlement Procedures Act of 1974)

42.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 41, *supra*, as if fully stated herein.

43.     This Count is brought by Plaintiff individually and on behalf of all members of the Class defined herein.

44.     At all time relevant hereto there was in full force and effect the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 *et seq.* ("RESPA").

45.     Section 2607(a) of RESPA prohibits, *inter alia*, "unearned fees," including charges in excess of those authorized by state law.  12 U.S.C. § 2607(b).

46.     The reasonable value of the services rendered by Defendant is equal to the statutorily allowed amount of its title insurance premium charges under state law.

47.     Notwithstanding the prohibitions of Section 2607(b), *supra*, Defendant accepted payment received by it in excess of the reasonable value of the services performed.

48.     The above-referenced charges were for the rendering of a real estate settlement service.

49.     The settlement at issue involved a federally related mortgage loan.

50.     The above-described excess portion accepted by Defendant was other than for settlement services actually performed.

51.     As a direct and proximate result of the foregoing acts and omissions of Defendant, Plaintiff and the Class were damaged in an amount to be proven at trial.

-11-

## COUNT II
### (Violation of the Michigan Consumer Protection Act and the Substantially Similar Laws of Other Class States )

52.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 41, *supra*, as if fully stated herein.

53.     This Count is brought by Plaintiff individually and on behalf of members of the Class in the states of Michigan, Colorado, Minnesota, New Jersey and Tennessee only.

54.     At all times relevant hereto, there was in full force and effect the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.* (the "CPA"), and the substantially similar laws of Class states Colorado, Minnesota, New Jersey and Tennessee.

55.     Section 903 of the CPA makes unlawful "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1), as do the substantially similar laws of other Class states, *supra. See* Colo. Rev. Stat. § 6-1-105 *et seq.* (Colorado), Minn. Stat. §§ 325F.68 *et seq.* and 8.31 (Minnesota), N.J. Rev. Stat. § 56:8-1 *et seq.* and 56:12-1 *et seq.* (New Jersey) and Tenn. Code Ann. § 47-18-101 *et seq.* (Tennessee).

56.     Section 903 of the CPA further prohibits "[r]epresenting that goods or services have . . . approval . . . that they do not have . . . ." Mich. Comp. Laws § 445.903(1)(c), as do the laws of the other Class states, *supra*.

57.     Defendant's issuance of title insurance policies to Plaintiff and the Class constituted a representation that the premium rates therefore were lawful and received the approval required by law as set forth herein.

58.     Section 903 of the CPA also makes unlawful "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not

-12-

reasonably be known by the consumer." Mich. Comp. Laws § 445.903(1)(s), as do the laws of the other Class states, *supra*.

59.     When it issued title insurance policies to Plaintiff and the Class at rates that were unlawful and in excess of those on file pursuant to law as set forth herein, *supra*, Defendant failed to disclose this material fact to Plaintiff and the Class in violation of Mich. Comp. Laws § 445.903(1)(s) and the substantially similar laws of other Class states, *supra*.

60.     Had the above-described undisclosed material fact been known to Plaintiff and the Class, they would not have paid the unlawful premium amounts.

61.     Further, Defendant's conduct alleged herein was deceptive, unfair and oppressive.

62.     As a direct and proximate result of the foregoing, Plaintiff and the Class were damaged in an amount to be proven at trial.

## COUNT III
### (Unjust Enrichment)

63.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 41, *supra*, as if fully set forth herein.

64.     This Count is brought by Plaintiff individually and on behalf of all members of the Class defined herein.

65.     Defendant received a benefit from Plaintiff and the Class in the form of the unlawful title insurance premiums they paid as set forth herein.

66.     Defendant's retention of the above-described unlawful premium payments has resulted in an equity to Plaintiff and the Class, the value of which will be proven at trial.

-13-

## COUNT IV
### (Declaratory Judgment)

67.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 41, *supra*, as if fully stated herein.

68.     This Count is brought by Plaintiff individually and on behalf of all members of the Class defined herein.

69.     At all times relevant hereto, there was in full force and effect the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* (the "DJA").

70.     Under Section 2201 of the DJA, "in a case of actual controversy within its jurisdiction . . ., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal remedies of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

71.     The claims of Plaintiff and other members of the class alleged herein constitute a case of actual controversy within the meaning of Section 2201(a), *supra*.

72.     This Court may, and should, declare the rights and legal remedies of Plaintiff and other members of the Class vis-à-vis Defendant and its unlawful premium rates described herein. Namely, Plaintiff seeks a declaration that:

      a.     Plaintiff and the Class qualified for lower "reissue" title insurance premium rates;

      b.     Defendant was obligated but failed to inform Plaintiff and the Class of the above-described material fact to charge the appropriate reissue rate; and

      c.     Defendant unlawfully charged rates in excess of those required to be filed pursuant to Mich. Comp. Laws § 500.2406 and the substantially similar laws of the other Class states, as set forth herein.

-14-

73.     Plaintiff and the Class are entitled to a permanent injunction requiring Defendant to notify in writing all owners of residential real estate who, in the context of a refinance transaction, paid or may pay in the future premiums for the purchase of title insurance from Defendant of: (1) the conditions upon which they may qualify for a reissue rate, (2) the reduced amount of that rate, and (3) the exact price of the officially rate scheduled premium for a "lender's" title policy which corresponds to the coverage amount being written.

74.     Plaintiff and the Class have no adequate remedy at law which would accomplish the relief sought herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class of persons defined herein, prays for relief and judgment against Defendant as follows:

A.      Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and certifying the Class defined herein;

B.      Designating Plaintiff as representative of the Class and his counsel as Class counsel;

C.      Entering judgment in favor or Plaintiff and the Class and against Defendant;

D.      Awarding Plaintiff and Class members their individual damages and attorneys' fees and allowing costs, including interest thereon;

E.      Awarding Plaintiff and Class members treble their damages, and their attorneys' fees and costs, pursuant to 12 U.S.C. § 2607(d)(2);

F.      Granting the declaratory relief sought herein and all other appropriate relief; and

G.      Granting all such further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

DATED: May __15__, 2007

Respectfully submitted,

_____

Thomas M. Wardrop
mac@wardroplaw.com
WARDROP & WARDROP, P.C.
300 Ottawa Avenue, N.W., Suite 150
Grand Rapids, Michigan 49503
Tel.: (616) 459-1225
Fax: (616) 459-7273

*Attorneys for Plaintiff and the Class*

*Of Counsel:*

Paul M. Weiss
paul@freedweiss.com
William M. Sweetnam
bills@freedweiss.com
FREED & WEISS LLC
111 West Washington Street, Suite 1331
Chicago, Illinois 60602
Tel.: (312) 220-0000
Fax: (312) 220-7777

Benjamin A. Schwartzman
bschwartzman@greenerlaw.com
GREENER BANDUCCI SHOEMAKER P.A.
950 West Bannock Street, Suite 900
Boise, Idaho 83702
Tel.: (208) 319-2600
Fax: (208) 319-2601

JS 44 (Rev. 11/04)

Case 2:10-cv-00190-BAF-LJM Document 1 Filed 06/16/07 Page 1 of 18 Muskegon County, Michigan

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
DANIEL G. GILMORE, individually and on behalf of all others similarly situated,

**DEFENDANTS**
FIRST AMERICAN TITLE INSURANCE COMPANY, a California corporation.

(b)  County of Residence of First Listed Plaintiff    Muskegon County, Michigan
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)
Thomas M. Wardrop, Wardrop & Wardrop, P.C.
300 Ottawa Avenue, N.W., Suite 150
Grand Rapids, MI 49503          (616) 459-1225

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Select One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

☐ 2  U.S. Government Defendant

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Select One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

Case: 2:07-cv-12123
Assigned To: Rosen, Gerald E
Referral Judge: Morgan, Virginia M
Filed: 05-16-2007 At 03:05 PM
CMP GILMORE V FIRST AMERICAN TITLE
INSURANCE CO (EW)

## IV. NATURE OF SUIT (Select One Box Only)

### CONTRACT
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### FORFEITURE
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

### PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☒ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Select One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. § 1332(d)(2)
Brief description of cause:
Violation of the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and related causes

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____
DOCKET NUMBER _____

DATE
May 11, 2007

SIGNATURE OF ATTORNEY OF RECORD
P-38268

FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG JUDGE _____

# PURSUANT TO LOCAL RULE 83.11

1.   Is this a case that has been previously dismissed?

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.   Other than stated above, are there any pending or previously
     discontinued or dismissed companion cases in this or any other
     court, including state court? (Companion cases are matters in which
     it appears substantially similar evidence will be offered or the same
     or related parties are present and the cases arise out of the same
     transaction or occurrence.)

☐ Yes
☑ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :