**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DANIEL G. GILMORE and
THOMAS BOUCHER, individually and
on behalf of all others similarly situated,

       Plaintiffs,

v.

       Case No. 07-12123
       Hon. Gerald E. Rosen

FIRST AMERICAN TITLE INSURANCE
COMPANY,

       Defendant.
_____/

**OPINION AND ORDER REGARDING
DEFENDANT'S MOTION TO DISMISS**

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    September 11, 2009   

PRESENT: Honorable Gerald E. Rosen
               Chief Judge, United States District Court

## I. INTRODUCTION

Plaintiff Daniel G. Gilmore commenced this putative class action in this Court on May 16, 2007, initially asserting a federal claim under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.,* and state-law claims arising from allegations that Defendant First American Title Insurance Company charged him an excessive premium on a lender's policy of title insurance issued in connection with a refinancing transaction on his Michigan residence. After Defendant filed a motion to

dismiss this complaint in its entirety, a first amended complaint was filed on June 9, 2008, adding Washington resident Thomas Boucher as a second named Plaintiff and asserting claims of (i) violation of the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq.,* and the substantially similar laws of Arizona, Colorado, Minnesota, and New Jersey,[1] (ii) unjust enrichment, and (iii) declaratory judgment. This Court's subject matter jurisdiction is predicated on an aggregation of class member claims exceeding $5,000,000 in value, with the members of the plaintiff class being citizens of states different from the California Defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

In lieu of answering the first amended complaint, Defendant again has moved to dismiss this pleading in its entirety. Through this motion, Defendant argues (i) that Plaintiffs are required under Fed. R. Civ. P. 9(b) to plead their Washington Consumer Protection Act claim with particularity, but have failed to do so; (ii) that Plaintiffs cannot state a claim for unjust enrichment in light of the express contract that establishes the premium to be paid for a lender's policy of title insurance; (iii) that there is no immediate controversy between the parties that would warrant an award of declaratory relief; and (iv) that the two named Plaintiffs, residents of Michigan and Washington, are not adequate representatives for putative class members residing in the other states encompassed within the first amended complaint's definition of the class — namely,

---

[1] The initial complaint asserted a claim under the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901 *et seq.* In its initial motion to dismiss, however, Defendant argued that as an insurance company, it was exempt from liability under this Michigan statute, and Plaintiffs' first amended complaint no longer asserts a claim under the Michigan act.

Arizona, Colorado, Maryland, Minnesota, Missouri, New Jersey, Tennessee, and Texas. In response, Plaintiffs (i) deny that their Consumer Protection Act claim must be pled with particularity, but contend that they have met this heightened standard in any event; (ii) argue that the excessive charges allegedly imposed by Defendant are not a matter covered by any contract between the parties, and therefore may support a claim of unjust enrichment; (iii) contend that their pleas for declaratory and injunctive relief are appropriate; and (iv) maintain that it would be premature to determine their suitability or standing to litigate claims on behalf of class members residing in other states.

Having reviewed the parties' written submissions in support of and opposition to Defendant's motion, as well as the remainder of the record, the Court finds that the pertinent facts, allegations, and legal issues are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendant's motion "on the briefs." *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. This opinion and order sets forth the Court's rulings on this motion.

## II. FACTUAL BACKGROUND

Plaintiffs' claims in this case rest upon allegations that Defendant First American Title Insurance Company overcharged them, and others similarly situated, for the premiums on lender's policies of title insurance issued in connection with refinancing transactions. As set forth in the first amended complaint, all title insurers, including Defendant, are required by law to file rate schedules with the insurance departments of

those states in which they conduct business, and to adhere to these schedules in the premiums they charge on lender's policies of title insurance. Plaintiffs further allege that the rate schedules filed by title insurers often reflect discounted premiums for title insurance issued in connection with refinancing transactions, in light of a number of factors that reduce the risks against which such "reissue" or "refinance" policies must insure. (*See* First Amended Complaint at ¶¶ 3-7.) Similarly, Defendant's rate manuals for the states of Michigan and Washington provide for substantially discounted rates on lender's policies of title insurance issued in connection with refinancing transactions, provided that certain specified conditions are met. (*See id.* at ¶¶ 31-32.)

According to the first amended complaint, Plaintiffs Daniel G. Gilmore and Thomas Boucher entered into refinancing transactions under which they "qualified for and were entitled to receive" discounted rates on the premiums they paid to Defendant for title insurance. (*Id.* at ¶¶ 33-37.) Nonetheless, both Plaintiffs were charged the full premiums for lender's coverage, and not the discounted rates to which they allegedly were entitled. The complaint alleges that this "wrongful conduct was part of a uniform scheme and common course of conduct wherein Defendant overcharged consumers for title policies by failing to accord them discounted reissue rates in connection with qualifying refinance transactions, and failing to inform such customers that they qualify (or may qualify) for such discounted rates." (*Id.* at ¶ 38.)

### III. ANALYSIS

**A.     The Standards Governing Defendant's Motion**

Through the present motion, Defendant seeks the dismissal under Fed. R. Civ. P. 12(b)(6) of each of the three claims asserted in Plaintiffs' first amended complaint. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. *League of United Latin American Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007). Yet, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (internal quotation marks, alteration, and citations omitted). Rather, to withstand a motion to dismiss, the complaint's factual allegations, accepted as true, "must be enough to raise a right to relief above the speculative level," and to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 555, 570, 127 S. Ct. at 1965, 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949. The Court will apply these standards in resolving Defendant's motion.

**B.     The Species of Consumer Protection Act Claim Asserted in Count I of**

**Plaintiffs' Complaint Need Not Be Pled with Particularity.**

As its first challenge to Plaintiffs' complaint, Defendant argues that the Count I claim under the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.010 *et seq.,* and the substantially similar laws of several other states fails because it has not been pled "with particularity" in accordance with Fed. R. Civ. P. 9(b). In Defendant's view, while Count I of the complaint lacks any express allegations of fraud or fraudulent conduct, this claim nonetheless is "grounded in fraud" or "sound[s] in fraud," and thus must satisfy the Rule 9(b) requirement of particularity. *See, e.g., Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003). The Court cannot agree.

Plaintiffs' CPA claim rests upon a provision that prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Wash. Rev. Code § 19.86.020.[2] To establish a violation of this provision, a plaintiff must show (i) an unfair or deceptive act or practice, (ii) occurring in trade or commerce, (iii) affecting the public interest, (iv) injuring the plaintiff in his or her business or property, and (v) caused by the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Insurance Co.,* 719 P.2d 531, 535 (Wash. 1986); *see also Blaylock v. First American Title Insurance Co.,* 504 F. Supp.2d 1091, 1105 (W.D. Wash. 2007). In support of their CPA claim in this case, Plaintiffs allege that

---

[2]Plaintiffs assert in their complaint that the consumer protection laws of several other states include similar prohibitions. (*See* First Amended Complaint at ¶ 43.) For present purposes, however, the parties have focused solely on the Washington CPA, and the Court will do likewise.

Defendant's "issuance of title insurance policies to [the members of the plaintiff class] at non-discounted rates was unfair, deceptive or both insofar as they were lawfully entitled to a credit that would have substantially reduced the amount of the premium they would have paid." (First Amended Complaint at ¶ 44.) Plaintiffs further allege that "[h]ad the above-described undisclosed material fact been known to [the members of the plaintiff class], they would not have paid the unlawful premium amounts." (*Id.* at ¶ 47.)

As Defendant points out, and as at least one court has expressly confirmed, a CPA claim that is grounded in fraud or that rests upon allegations of fraudulent conduct must be pled in accordance with the particularity standard of Rule 9(b). *See Fidelity Mortgage Corp. v. Seattle Times Co.,* 213 F.R.D. 573, 575 (W.D. Wash. 2003) (holding that the Rule 9(b) standard applied to the plaintiff's claims under the CPA and other state and federal statutes where the complaint alleged an "ongoing consumer fraud" and charged the defendant with "knowingly publish[ing] false, deceptive, and/or misleading information"). In addition, a claim may be grounded in fraud, and thus subject to the heightened pleading standard of Rule 9(b), even if the defendant's allegedly fraudulent conduct rests upon an omission or failure to disclose, as opposed to an affirmative misrepresentation. *See, e.g., Wessa v. Watermark Paddlesports, Inc.,* No. C06-5156, 2006 WL 1418906, at *3 (W.D. Wash. May 22, 2006). More generally, and as noted earlier, it is not necessary that a plaintiff expressly assert a claim of fraud, nor that fraud be "a necessary element of a claim," in order to trigger the particularity requirement of Rule 9(b), so long as the claim is grounded in fraud, sounds in fraud, or rests upon

7

averments of fraud. *Vess,* 317 F.3d at 1103-04; *see also Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007) (explaining that "Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations").

Although the bulk of the cases cited by Plaintiffs either provide little guidance or are wholly inapposite,[3] the Court nonetheless concludes that the CPA claim advanced in Count I of the complaint is not subject to Rule 9(b)'s heightened pleading standard. The key element of this claim, for purposes of the present inquiry, is an "unfair or deceptive" act or practice. While fraudulent conduct presumably would satisfy this element of a CPA claim, Plaintiffs' complaint nowhere alleges that Defendant engaged in such conduct. Instead, while the allegations of the complaint are not as clear and specific as they could be on this point, Plaintiffs' CPA claim appears to rest upon the "unfair or deceptive" practices of (i) failing to charge the discounted title insurance rates to which Plaintiffs and the class members allegedly were entitled, (*see* First Amended Complaint at ¶¶ 8, 38, 44), and (ii) failing to inform borrowers in refinancing transactions "that they

---

[3]The most glaring example of this is Plaintiffs' citation to *Jepson v. Ticor Title Insurance Co.,* No. C06-1723, 2007 WL 2060856 (W.D. Wash. May 1, 2007), as a case in which the court "found under virtually identical allegations that the plaintiff stated a claim under Washington's [CPA]." (Plaintiffs' Response Br. at 10.) While a CPA claim was asserted in *Jepson,* the cited decision does not even address this claim, much less discuss whether this claim was subject to the heightened pleading standard of Rule 9(b). As another example, *Blaylock v. First American Title Insurance Co.,* 504 F. Supp.2d 1091, 1105-06 (W.D. Wash. 2007), is not a "title premium overcharge[]" case, as Plaintiffs contend, (Plaintiffs' Response Br. at 11), nor did the court address whether the "unfair or deceptive practice" element of a CPA claim must be pled with particularity under Rule 9(b).

8

qualify (or may qualify) for such discounted rates," (*id.* at ¶¶ 38, 47.) Leaving aside the question whether these practices qualify as "unfair or deceptive" within the meaning of the CPA,[4] they are not readily characterized as fraudulent.

Under similar circumstances, courts have held that a plaintiff's allegations of "unfair or deceptive" acts need not be pled with particularity under Rule 9(b). In *Vernon v. Qwest Communications International, Inc.,* No. C08-1516, 2009 WL 2160778, at *1 (W.D. Wash. July 16, 2009), for example, the court addressed allegations that defendant Qwest violated the Washington CPA and a number of other laws by charging customers an early termination fee for cancelling their internet service. In support of their CPA claim, the plaintiffs alleged that Qwest's "omissions and misrepresentations about the existence and amount of the [early termination fee] ha[d] the tendency or capacity to mislead consumers." *Vernon,* 2009 WL 2160778, at *5 (internal quotation marks and citation omitted). The court found that the heightened standard of Rule 9(b) was not applicable to this claim, reasoning that the plaintiffs had not alleged "an intent to deceive" or "facts that constitute fraud," and that "the gravamen of the complaint is not fraud." *Id.* Thus, while the plaintiffs in that case "concede[d] that fraud is one of the many possible unfair or deceptive acts for which a consumer may seek relief under consumer protection statutes," the court nonetheless held that the plaintiffs had not "alleged fraud as an element of their consumer protection act claims." *Id.*

---

[4]Defendant's motion does not challenge Plaintiffs' CPA claim on this ground, nor is the Court otherwise called upon to address this question at the present juncture.

Similarly, in *Kreidler v. Pixler,* No. C06-0697, 2006 WL 3539005, at *1-*3 (W.D. Wash. Dec. 7, 2006), the plaintiff asserted breach of contract and tort claims, as well as a claim under Washington's CPA, arising from a failed corporate acquisition. The court rejected the defendants' argument that the CPA claim must be pled with particularity under Rule 9(b), reasoning that "[a] CPA claim, unlike a fraud claim, requires a public interest impact, and does not require proof of intent and knowledge that material misrepresentations are false and misleading." *Kreidler,* 2006 WL 3539005, at *11. Accordingly, the court held that the complaint "met the traditional pleading requirements for [a] CPA claim," in light of its allegations of deception, misrepresentations, and the unlawful retention of payments due to the plaintiff. *Id.* at *12; *see also Gordon v. Impulse Marketing Group, Inc.,* 375 F. Supp.2d 1040, 1048 (E.D. Wash. 2005) (finding that the plaintiff did not need to satisfy Rule 9(b)'s heightened pleading requirement with respect to a claim under a Washington statute that "speaks to acts that 'misrepresent', 'mislead', contain 'falsities', and/or 'obscure' information," in light of the distinctions between the elements of a claim under this statute and the elements of a fraud claim); *Ferron v. Search Cactus, L.L.C.,* No. 2:06-cv-327, 2007 WL 1792332, at *4 (S.D. Ohio June 19, 2007) (declining to apply the Rule 9(b) standard where the word "fraud" did not appear in the complaint, and where "fraud is not an element needed to establish a violation of" an Ohio consumer protection statute that prohibited "'unfair,' 'deceptive,' or 'unconscionable' consumer sales practices").

Just as in these cases, Plaintiffs here have asserted a claim under a statute, the

CPA, that reaches "unfair or deceptive" conduct and practices that would not qualify as fraudulent. Moreover, the conduct and practices alleged in the complaint are not readily characterized as fraudulent, nor have they been actually described in these terms. Consequently, the Court finds that Plaintiffs' CPA claim is not grounded in fraud, and that the allegations in support of this claim need not be stated with particularity under Rule 9(b).[5]

**C.     There Is No Allegation of an Express Contract Between the Parties That Would Preclude a Claim of Unjust Enrichment.**

In count II of their complaint, Plaintiffs assert a claim of unjust enrichment based upon Defendant's retention of excessive, non-discounted title insurance premiums. In seeking dismissal of this claim, Defendant contends that the premiums it charges are established within the title insurance policies it issues to lenders, and it argues that this express contract defeats a claim of unjust enrichment. As Plaintiffs point out, however this appeal to an express contract is utterly unavailing here.

It is true, of course, that there can be no recovery under a theory of unjust enrichment "when the parties are bound by an express written agreement." *APJ Associates, Inc. v. North American Philips Corp.,* 317 F.3d 610, 617 (6th Cir. 2003).[6] Yet, the contract upon which Defendant relies here — the lender's policy of title

---

[5]In light of this conclusion, the Court need not reach Plaintiffs' contention that their allegations could meet the heightened standard of Rule 9(b).

[6]Even so, a plaintiff may assert a breach of contract claim in one count of his complaint, and allege the existence of a contract between the parties in support of this claim, but still assert a claim of unjust enrichment in the alternative.

insurance — is between Defendant *and the lender,* and Plaintiffs are neither parties to these lender's policies nor in privity with the parties. Not surprisingly, then, Plaintiffs have not asserted a breach of contract claim, nor do they allege any sort of contractual right to a discounted title insurance premium. Indeed, Plaintiffs do not seek in any way to enforce the price term of the lender's policies issued by Defendant in this case but, to the contrary, challenge this price term as excessive and unlawful. It follows that there is no relevant "express written agreement" in this case that could stand in the way of Plaintiffs' effort to recover under a theory of unjust enrichment. *See Hoving v. Transnation Title Insurance Co.,* 545 F. Supp.2d 662, 670 (E.D. Mich. 2008) (permitting the plaintiff to go forward on a claim of unjust enrichment arising from allegations of excessive title insurance premiums in refinancing transactions, and rejecting the defendant title insurer's contention "that the existence of an express contract precludes an unjust enrichment claim"); *Barnes v. First American Title Insurance Co.,* No. 1:06CV574, 2006 WL 2265553, at *9-*10 (N.D. Ohio Aug. 8, 2006) (permitting an unjust enrichment claim to go forward in a case alleging overcharges for title insurance, and reasoning that the plaintiffs could plead such a claim in the alternative to their claim of breach of an implied contract).[7]

**D.     Plaintiffs Have Not Identified a Basis for an Award of Declaratory Relief to**

---

[7]Defendant seemingly recognizes that its challenge to Plaintiffs' claim of unjust enrichment is groundless, as it does not even address this claim in the reply brief in support of its motion, much less attempt to refute the arguments advanced and authorities cited in Plaintiffs' response to its motion.

**Them or the Putative Class.**

In Count III of the first amended complaint, Plaintiffs seek an award of declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* Specifically, they ask the Court to declare (i) that "Plaintiffs and the Class qualified for lower 'reissue' title insurance premium rates," (ii) that "Defendant was obligated but failed to inform Plaintiff and the Class of the above-described material fact [and] to charge the appropriate reissue rate," and (iii) that "Defendant unlawfully charged rates in excess of those required to be filed" under the insurance laws of various states. (First Amended Complaint at ¶ 59.) Defendant seeks the dismissal of this count of the complaint, arguing that Plaintiffs cannot establish an entitlement to declaratory relief because their transactions with Defendant are complete and any purported overcharges have already occurred. The Court agrees.

It is well settled that "[t]he Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction," but "only provides courts with discretion to fashion a remedy." *Heydon v. MediaOne of Southeast Michigan, Inc.,* 327 F.3d 466, 470 (6th Cir. 2003). Moreover, before electing to exercise its discretionary power under this statute, a court must satisfy itself that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941).

In this case, Plaintiffs allege in their complaint that Defendant is engaged in a

routine, systematic, and presumably ongoing practice of "charg[ing] customers well in excess of" the legally mandated rates for lender's title insurance policies in refinancing transactions. (First Amended Complaint at ¶ 1.) Yet, the declarations sought in Count III of the complaint are entirely backward-looking, addressing the legality of the overcharges already imposed upon Plaintiffs and the members of the plaintiff class. Under these circumstances, the Court agrees with Defendant that Plaintiffs' plea for declaratory relief lacks sufficient immediacy, where the transactions that would be addressed by the requested declarations have already occurred and could not be prevented or mitigated by an award of declaratory relief. *See, e.g., Banas v. Dempsey,* 742 F.2d 277, 282-83 (6th Cir. 1984) (observing that declaratory relief would not have been appropriate as to those plaintiffs who were "under no threat of further injury as a result of defendant's conduct"). In addition, the requested relief would not be warranted absent a successful showing that Plaintiffs and the class members were entitled to discounted rates and were overcharged; yet, in this event, they would be made whole through legal remedies (*i.e.,* rebates of the overcharges), thereby obviating the need for declaratory relief. *See Scottsdale Insurance Co. v. Roumph,* 211 F.3d 964, 968 (6th Cir. 2000) (instructing the district courts to consider, among other factors, "whether there is an alternative remedy that is better or more effective" in making the discretionary decision whether to award declaratory relief). Accordingly, the Court finds no basis in the allegations of Plaintiffs' complaint for the requested award of declaratory relief.

Defendant also points to (and challenges) Plaintiffs' request in Count III for a

permanent injunction requiring Defendant to give notice in future refinancing transactions that the borrower may be entitled to a discounted rate on a lender's policy of title insurance. Certainly, such a plea for relief may not properly rest upon Count III alone, which is brought under the Declaratory Judgment Act and does not set forth any underlying, substantive basis for relief of any sort. Beyond this, however, the Court declines to decide, at the threshold pleading stage of this case, whether the requested award of injunctive relief might be appropriate in the event that Plaintiffs prevail on one or both of their two substantive claims, violations of the consumer protection laws of various states and unjust enrichment.

E.  **The Court Declines to Decide on the Pleadings Alone Whether Plaintiffs Are Adequate Representatives for Putative Class Members Residing in Other States.**

As the basis for the final argument advanced in its motion to dismiss, Defendant points to the complaint's definition of the putative class as encompassing all persons in several states who paid Defendant's standard rate for lender's title insurance policies issued in connection with refinancing transactions. (First Amended Complaint at ¶ 15.) Yet, the named Plaintiffs reside in only two of these states, Michigan and Washington. Defendant contends that these two Plaintiffs cannot possibly establish that they can "fairly and adequately protect the interests" of class members residing in other states, as required to meet the prerequisites for class certification under Fed. R. Civ. P. 23(a), and that the Court therefore should strike the portion of the complaint in which Plaintiffs allege that they can meet this standard.

15

Just as Judge Lawson of this District held under similar circumstances, *see Hoving,* 545 F. Supp.2d at 665-68, this Court finds that the issue of Plaintiffs' suitability to represent putative class members in other states should await determination along with the other Rule 23 issues that must be addressed at the class certification stage of this litigation. At the moment, at least, Plaintiffs have alleged that the consumer protection laws of Washington and several other states encompassed within their definition of the class are substantially similar, and the elements of a claim of unjust enrichment presumably are similar in each of the states encompassed within this definition. Moreover, Plaintiffs have affirmatively alleged that each of the class states has substantially similar laws requiring insurers such as Defendant to file their rates with the state insurance commissioner and to adhere to these rates. Whether these considerations are enough to satisfy the "adequate representative" and other prerequisites of Rules 23(a), or whether it will instead be revealed that class members residing in the various states stand on considerably different legal footings from one another, the Court finds it best to make such inquiries in connection with any eventual motion for class certification, and not on the initial pleadings.

## IV. **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's motion to

dismiss amended complaint (docket #23) is GRANTED as to Count III of the first amended complaint, and is otherwise DENIED.

                             s/Gerald E. Rosen
                             Chief Judge, United States District Court

Dated: September 11, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 12, 2009, by electronic and/or ordinary mail.

                             s/Ruth Brissaud
                             Case Manager