HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THOMAS BOUCHER, et al.,

        Plaintiffs,

    v.

FIRST AMERICAN TITLE INSURANCE
COMPANY,

        Defendant.

CASE NO. C10-199RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Plaintiffs' motion to seal and Plaintiffs' motion to compel discovery.  Dkt. ## 138, 140.  Plaintiffs and Defendant First American Title Insurance Company ("First American") jointly filed the latter motion in accordance with Local Rules W.D. Wash. CR 37(b)(1)(B).  For the reasons stated below, the court GRANTS the discovery motion in part, DENIES it in part, and GRANTS the motion to seal.  The court sets a December 16, 2011 deadline for Plaintiffs to file a renewed class certification motion.

## II.  BACKGROUND & ANALYSIS

**A.**    **Discovery Motion**

In May 2, 2011, the court denied Plaintiffs' motion to certify a class of Washingtonians who First American may have overcharged for title insurance.  When it

ORDER – 1

did so, the court gave Plaintiffs an opportunity to conduct additional discovery to support a renewed class certification motion. The court initially imposed an August 5 deadline for completing that discovery and filing the renewed motion. The court extended that deadline to November 7 on Plaintiffs' request. The court recently vacated the November 7 deadline, informing the parties that it would impose a new deadline in conjunction with the order resolving the discovery motion now before the court.

Plaintiffs demand the production of four categories of documents. Before discussing them, the court summarizes Plaintiffs' claims and their inability, so far, to certify a class of similar situated claimants.

Plaintiffs contend that First American failed to give a legally-mandated 50% discount to Washington customers refinancing their homes. A customer must meet several prerequisites to qualify for the discount. Among other things, a refinance customer must have had a lender's title insurance policy in place for his or her pre-existing mortgage. The court denied Plaintiffs' initial motion for class certification because they had identified no more than five people (out of as many as 170,000 First American customers who refinanced in Washington during the relevant time period) who met that condition but had not received the discount. The court allowed Plaintiffs to conduct additional discovery in an effort to identify a class of customers.

The motion before the court describes the discovery approach Plaintiffs have taken since the court's May order. Whereas years of prior litigation had yielded evidence of only five people who qualified for their proposed class, Plaintiffs have since May taken up a crusade to positively identify *every* person who qualified. To that end, the first demand in their motion is that First American use its FAST electronic database to produce a copy of the first two pages of *every* unsatisfied mortgage from a refinance transaction since late 2003. From those pages, Plaintiffs hope to extract an "order number" that they contend they can use to uncover a lender's title policy for the

ORDER – 2

unsatisfied mortgages in question.  First American contends that this would require a file-by-file review of about 250,000 transactions.  In addition, First American contends that it does not have possession of the mortgage documents.  Instead, First American uses a third-party company known as Data Tree to acquire such documents.  Data Tree charges First American for every document it obtains in excess of a monthly nationwide maximum of 2.5 million documents.  First American argues that satisfying Plaintiffs' requests for the mortgage documents would not only be unduly time consuming, it would be unduly costly.  First American also points out that its license agreement with Data Tree restricts its use of the documents that Data Tree provides.  Finally, it asserts that the "order number" stamped on the mortgages is not necessarily evidence of a pre-existing lender's title policy.

Plaintiffs' second demand was for every document in an electronic "document repository" that the FAST system associated with the order numbers they would obtain in their first demand.  First American again contends that this would require a file-by-file review for hundreds of thousands of order numbers.  It further states that it had no standardized practices for placing documents in the repository, and so it is uncertain at best whether the searches will yield evidence of prior lender's title policies, as Plaintiffs hope.

Plaintiffs' third demand was for First American to obtain essentially the same categories of documents as in their first two demands, but to obtain them instead from First American's independent agents.  Those agents make a substantial portion of First American's Washington sales, and they apparently keep much of the documentation of sales in their sole possession.  First American objects that it should not be forced to demand documents from independent agents, particularly where Plaintiffs could make the same demands in subpoenas.  For their part, Plaintiffs issued subpoenas to 27 of First

ORDER – 3

American's top-selling agents, but they still contend that First American should obtain those documents for them.

Plaintiffs' fourth demand was for a list of the name and address of every Washington insured to whom First American issued a title insurance policy from late 2003 to the present.  First American does not contend that this request is unduly burdensome, but rather that it has no obligation, at this stage in the litigation, to identify every potential class member.

About two months after the parties filed their motion, the parties informed the court that they had reached an agreement with First American in which Plaintiffs sharply curtailed the scope of their requests.  They apparently used other information from First American to identify about 9,000 transactions in which customers were potentially overcharged.  First American has agreed to produce documents from the document repository for a sample of about 3,000 of those transactions.  Plaintiffs hope that these documents will contain proof of the presence or absence of a prior lender's title policy for each of these transactions.  They acknowledge that the documents may not reveal this information in every case.  Where the documents are insufficient, but point to evidence that First American can obtain from Data Tree or from its independent agents, they expect First American to obtain that evidence.   Accordingly, they have narrowed their first two demands.  They do not, at this time, request any additional documents from the document repository.  Because they may make follow-up requests for documents that First American can obtain from Data Tree, they request that the court decide whether documents from Data Tree[1] and from independent agents are in First American's "possession, custody, or control," within the meaning of Fed. R. Civ. P. 34(a)(1).

---

[1] For the sake of completeness, the court notes that Plaintiffs' requests for information via Data Tree may also implicate requests from another third-party entity, Data Trace.  As the court understands it, Data Trace stores no documents, but instead indexes information from Washington title repositories.  It is possible that First American will use Data Trace to help it obtain documents from Data Tree in response to Plaintiffs' discovery.  There is no evidence that this will impose additional burden or cost on First American.

ORDER – 4

As to Plaintiffs' third and fourth demands, the parties have reached no agreement.

In considering Plaintiffs' demands, the court is mindful of the procedural posture of this litigation. Plaintiffs' task at this stage is not to prove their claims on behalf of every class member, it is to prove to the court that a sufficiently numerous class exists, and that Plaintiffs can ultimately manage this litigation in a way that allows the court to resolve those claims on a classwide basis.

With that in mind, the court observes that the first two of Plaintiffs' initial demands were facially overbroad. A party can avoid the production of electronically-stored documents by demonstrating that they are "not reasonably accessible because of undue burden or cost." Fed. R. Civ. P.26(b)(2)(B). First American has convinced the court that satisfying these first two demands would likely have required it to conduct, at a minimum, 250,000 separate electronic searches. Plaintiffs presented no evidence to convince the court that First American could automate this process. If each search took as little as 10 seconds, First American would have spent almost 700 hours completing them. Under some circumstances, that burden would perhaps be unavoidable. At this stage of the litigation it is not, because Plaintiffs have no need to force First American to search for documents for *every* potential class member. Instead (as the court discussed when it denied class certification), Plaintiffs needed to obtain records for an appropriately-sized and appropriately-chosen sample of potential class members. Plaintiffs' attempt to obtain those records for hundreds of thousands of people not only would have imposed an undue burden on First American, it would have been entirely unnecessary. The court must consider whether the burden and expense that a discovery request would impose "outweigh[] its likely benefit" considering, among other things, "the needs of the case" and the "importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(iii). The burden and expense that Plaintiffs' first two demands imposed outweighed their likely benefit at this stage of the case.

ORDER – 5

For these reasons, it is fortunate that Plaintiffs have curtailed their demands to a sample of about 3,000 transactions. Provided that this sample is appropriately representative of the broader class, it should give the Plaintiffs enough information to support a class certification motion. Producing documents as to this sample, moreover, imposes only a tiny fraction of the burden of Plaintiffs' original demands.

For this smaller sample, the court rules that First American must, to the extent necessary, produce documents from both Data Tree and its independent agents in accordance with Plaintiffs' first two demands. After Plaintiffs review the sample documents from the repository that First American has agreed to provide, they must decide whether additional documents will be necessary to satisfy their burden to certify a class. If so, Plaintiffs may demand that First American produce additional documents, whether from Data Tree or its agents, to complete the evidentiary picture as to the status of this sample of First American customers.

In making that determination, the court rules that documents First American can obtain from its agents or from Data Tree are within its "control" within the meaning of Fed. R. Civ. P. 34(a)(1). Plaintiffs have shown that at least five First American agents have agreed, by contract, to satisfy any First American demand for documents. One agreement, for example, requires the agent to produce any documents "of any kind that relate in any way to the activities of [the] Agent governed by the Agency and this AGREEMENT or to the Policies issued by [the] Agent" at "any reasonable time upon request from First American." First American offers no evidence to dispute that all of its agents have similar obligations to produce documents on demand. First American therefore has control over its agents' documents. As to Data Tree, First American's license agreement requires it to obtain permission before disclosing some Data Tree documents to outside parties. Anthony Thompson, a Data Tree director, filed an extensive declaration explaining his company's relationship with First American, the

ORDER – 6

services it provides, and the cost of those services.  He does not declare, however, that Data Tree would object to the disclosure of documents it provides to First American for purposes of this litigation.  There is no apparent basis for such an objection, moreover, because any disclosure to Plaintiffs would be subject to the parties' existing confidentiality agreement.  Dkt. # 66.  First American thus has "control" over the documents it obtains from Data Tree.

The court also rules that there is no better source for Data Tree and agency documents than First American.  A court must consider whether discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C)(i).  Here, there is no indication that Plaintiffs have the option to subpoena documents directly from Data Tree, or even that First American would prefer that approach.  First American not only has access to Data Tree's resources, its FAST system allows it to order documents from Data Tree directly.  As to First American's agents, Plaintiffs have already served subpoenas.  Given the apparent lack of results, however, it is apparent that this source is no more convenient than requesting those documents via First American.

To the extent that First American must pay Data Tree for the documents it ultimately requests, Plaintiffs will reimburse First American for those costs.  When First American considered the likely cost of those documents, it was considering Plaintiffs' overbroad requests for hundreds of thousands of records.  There is no evidence that the much smaller number of records now at issue will impose any out-of-pocket cost on First American.  If First American proves otherwise, however, the court will require Plaintiffs to reimburse it.

This brings the court to Plaintiffs' third demand, which would require First American to obtain additional documents from its agents.  No one has provided much information about the scope of this demand, but it appears that Plaintiffs are again

ORDER – 7

seeking essentially every mortgage document and associated documents evidencing a lender's title policy for any refinance transaction over the past eight years.  There is no indication that this is necessary, given Plaintiffs' class-certification needs.  Although the court reiterates its ruling that its agents' documents are in First American's control, the court rules that Plaintiffs' third demand is unduly burdensome.[2]  Plaintiffs may, if time permits, attempt to reach an agreement as to an appropriate sample of documents from First American's agents.

As to Plaintiffs' fourth demand, the court will grant no relief.  Forcing First American to produce the name and address of every customer over the past eight years is out of proportion to Plaintiffs' needs in certifying a class.  Plaintiffs will obtain names and addresses for the sample discussed above by reviewing the documents First American has agreed to produce.  No more is necessary at this stage.  The court notes, however, that it appears that First American has the ability to produce this list without undue burden.  If Plaintiffs ultimately need the list (for example, to assist them in giving notice to class members if the court certifies a class), Plaintiffs may reassert their demand.

**B.    Motion to Seal**

In compliance with the parties' confidentiality agreement, Plaintiffs filed three categories of documents under seal:  the unredacted declaration of Data Tree director Andrew Thompson, First American's license agreements with Data Tree and Data Trace, and the agreements between First American and five independent agencies.  First American asks the court to keep each document under seal.  In a nondispositive motion like this one, First American bears the burden of showing good cause to overcome the presumption of public access to court files.  Local Rules W.D. Wash. CR 5(g)(2).

---

[2] The court does not suggest that the subpoenas Plaintiffs have served impose an undue burden on any individual agent.  That dispute is not before the court.

ORDER – 8

1    First American has shown good cause to maintain Mr. Thompson's declaration

2    and the Data Tree and Data Trace license agreements under seal.  The sole redactions in

3    Mr. Thompson's declaration pertain to specific terms of the license agreements, usually

4    pricing terms.  Data Tree wishes to keep that competitively sensitive information private,

5    and the court sees no compelling need for disclosure here.  The court has already

6    disclosed the relevant content of Mr. Thompson's declaration.  As to the license

7    agreements, they are important to this litigation only because they reveal limitations on

8    First American's use of information it obtains from these services, and because they

9    reveal the cost of that information.  The court has revealed that information previously in

10   this order, at least to the extent necessary to explain its decision.  No further disclosure of

11   these competitively sensitive documents is necessary.

12   As to the agency agreements, the court notes that this is the third time that the

13   parties have asked the court to consider whether or not to seal them.  *See* Dkt. ## 126,

14   144.  In this motion, the sole reason for which Plaintiffs rely on the agreements is that

15   each of them contains a term requiring the agent to produce documents within a

16   reasonable time after First American's demand.  First American cannot shield this fact

17   from public view.  The court disclosed the relevant language of that term earlier in this

18   order.  The court finds, however, that no one would gain from the disclosure of the entire

19   agreements, which contain some arguably competitively sensitive information that is not

20   relevant at this stage of this litigation.

ORDER – 9

### III.  CONCLUSION

For the reasons stated above, the court GRANTS Plaintiffs' discovery motion in part and DENIES it in part.[3]  Dkt. # 140.  The court GRANTS Plaintiff's motion to seal. Dkt. # 138.

The court must also set a new deadline for a class certification motion.  As the court has noted in its prior orders, that motion is long overdue.  Until relatively recently, moreover, Plaintiffs were not diligent in attempting to obtain the evidence necessary to support that motion.  No one has proposed a new deadline.  In recognition of the additional time it will take for Plaintiffs to review documents First American has agreed to produce, plus any necessary follow-up, the court imposes a December 16 deadline to file the motion.

DATED this 4th day of November, 2011.

_Richard A Jones_

The Honorable Richard A. Jones
United States District Court Judge

---

[3] First American filed a surreply that contained a motion to strike portions of Plaintiffs' counsel's declaration along with portions of the joint discovery motion incorporating those portions.  First American asserts, correctly, that Plaintiffs' counsel modified the declaration it shared with First American's counsel after receiving First American's submissions for the joint motion.  CR 37 does not require the moving party to give the responding party advance notice of its reply to the party's response or of evidence supporting that reply.  The court thus finds no violation of CR 37, and no need to strike any portion of the motion.  The court observes, however, that Plaintiffs' counsel's conduct flouts the cooperative spirit of CR 37.  The court has made a similar observation once before, when Plaintiffs' counsel was on the opposite side of the same issue in a different case.  In that case, Plaintiffs' counsel complained that defense counsel had unreasonably refused to share declarations supporting its position in a joint CR 37 motion.  The court sided with Plaintiffs' counsel.  It is disappointing that Plaintiffs' counsel now engages in essentially the same conduct that it once decried as unreasonable.

ORDER – 10